IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  09-cv-02087-WYD-KLM

SAMMIE LEE DENSON,

      Plaintiff,

v.

MAJOR L. MAUFELD,

      Defendant.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Defendant's **Motion to Dismiss** [Docket No. 27;

Filed January 8, 2010] ("Motion to Dismiss").  Plaintiff filed a Response in opposition to the

Motion to Dismiss on February 10, 2010 [Docket No. 37], and Defendants did not file a

reply.   The Motion is fully briefed and ripe for resolution.   Pursuant to 28 U.S.C. §

636(b)(1)(A) and D.C.COLO.L.Civ.R. 72.1.C., the matter has been referred to this Court

for recommendation.  The Court has reviewed the Motion, Plaintiff's Response, the entire

case file, the applicable law and is sufficiently advised in the premises.  For the reasons set

forth below, the Court respectfully **RECOMMENDS** that the Motion to Dismiss be

**GRANTED in part and DENIED in part**.

## I.  Summary of the Case

      Plaintiff, who is proceeding *pro se*, is currently incarcerated at the Limon

Correctional Facility ("LCF") in Limon, Colorado [Docket No. 38].  In September 2009,

Plaintiff filed an action pursuant to 42 U.S.C. § 1983 asserting that several Defendants

violated his constitutional rights. *Complaint* [#3] at 3-12. Pursuant to a November 4, 2009 Order, the only remaining Defendant is Defendant Major L. Maufeld and the only remaining claim is whether Defendant Maufeld violated Plaintiff's constitutional rights by placing him in admininistrative segregation [Docket No. 16]. Defendant Maufeld is employed by the Colorado Department of Corrections ("CDOC") and works at the Colorado Territorial Correctional Facility ("CTCF") where the alleged unlawful segregation decision occurred. At the time of the Complaint's filing, Plaintiff was incarcerated in administrative segregation at the Centennial Correctional Facility ("CCF"). He has since been transferred to LCF, and it is unclear whether he remains in administrative segregation.

The facts giving rise to Plaintiff's Complaint are as follows. While incarcerated at CTCF, Plaintiff was charged with a disciplinary infraction after a letter he wrote to a friend was discovered in his cell.[1] *Id.* at 3. In the letter, Plaintiff offered to sell drugs at the prison to help his friend. *Id.* After discovery of the letter, Plaintiff was transferred to segregation to await a disciplinary hearing. While there, he sent several letters to Defendant, first attempting to explain his actions and then, after she did not answer, venting his anger toward her and calling her "the great one" and "the superior one." *Id.* at 4-6. At the conclusion of the disciplinary hearing to address the letter to Plaintiff's friend, Plaintiff was sentenced to time served in segregation. *Id.* at 4-5. However, "[a]round twenty minutes after the plaintiffs [sic] hearing," he was told that Defendant had decided to place him in administrative segregation despite that the hearing officers had found that no further

---

[1] In the Complaint, Plaintiff indicates that he had been released from a five-year period of segregation only a few days prior to the discovery of the letter. *Complaint* [#3] at 3. This five-year period does not appear to be at issue in the present matter.

punishment was necessary.  *Id.* at 5.  Plaintiff had a hearing with Defendant to discuss the insulting letters he had sent her.  *Id.*   At the hearing, Plaintiff was told that Defendant had decided to indefinitely place him in administrative segregation.  Believing this punishment to be unwarranted, Plaintiff accused Defendant of being a racist and punishing white and Hispanic inmates less severely.  *Id.* at 6-7.

Due to Plaintiff's placement in administrative segregation, he was transferred from CTCF to the Colorado State Penitentiary ("CSP") where he remained in segregation until October 2008, when he was transferred to CCF.  *Id.* at 10.  At the time of the Complaint's filing, Plaintiff alleged that he continued to be held in administrative segregation at CCF.  *Id.* at 12.

In his Complaint, Plaintiff alleges that Defendant's conduct constitutes four distinct constitutional violations:

- A Fourteenth Amendment due process violation because Plaintiff's conditions of confinement at CSP (which remained in force at CCF) constitute an atypical and significant hardship;

- A Fourteenth Amendment equal protection violation because Defendant allegedly treated him more harshly than white or Hispanic inmates;

- An Eight Amendment violation because Plaintiff's conditions of confinement constitute cruel and unusual punishment; and

- A First Amendment violation because Defendant was motivated to retaliate against Plaintiff for writing letters which were critical of her.

*Id.* at 13-28.

Defendant filed a Motion to Dismiss Plaintiff's claims against her on several legal

grounds. First, Defendant asserts that Plaintiff cannot challenge his segregation classification unless it has first been invalidated because of its alleged impact on the length of his sentence. *Motion to Dismiss* [#27] at 3-5. Defendant also contends that Plaintiff's claims fail to raise constitutional injuries. *Id.* at 5-12. Finally, Defendant argues that she is entitled to qualified immunity. *Id.* at 12-13.

## II. Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That is, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *TON Services, Inc. v. Qwest Corp.*, 493 F.3d 1225, 1235 (10th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted).

As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). However, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Ashcroft*, 129 S. Ct. at 1949 (citation omitted).

Finally, the Court must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 594, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III.  Analysis

### A.    Fourteenth Amendment Due Process

As a preliminary matter, Defendant argues that Plaintiff's due process claim is barred

by *Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994) (holding that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated"). *See also Edwards v. Balisok*, 520 U.S. 641, 643-47 (1997) (applying *Heck* to prison disciplinary decisions where the punishment resulted in administrative segregation and the lengthening of prisoner's sentence). Specifically, Defendant contends that because an inmate in administrative segregation is not eligible to accrue earned-time credit, Plaintiff's due process challenge necessarily impacts the duration of his sentence. *Motion to Dismiss* [#27] at 3-5.

The Court rejects Defendant's contention that *Heck* bars Plaintiff's claim. Nowhere in his Complaint does Plaintiff contend that he is seeking to restore lost earned-time credit or that the length of his sentence was impacted by the decision to place him in administrative segregation. *See Slack v. Jones*, 348 Fed. Appx. 361, 364 (10th Cir. Oct. 5, 2009) (holding that *Heck* not applicable where complaint merely implicates loss of privileges and conditions of confinement); *Ramos v. Keller*, 09-cv-00824-WYD-KLM, 2010 WL 743666, at *5 (D. Colo. Mar. 2, 2010) (unpublished decision) (noting that where complaint is silent, allegations do not necessarily call into question length of sentence). At this stage, the Court only considers information contained in the Complaint, attachments to it, or matters of public record. Defendant's theoretical contention that Plaintiff, in fact, lost earned-time credit is not readily apparent from review of any of those materials. *See Thompson v. McCullar*, 08-cv-02000-REB-KLM, 2009 WL 2913207, at *4 (D. Colo. Sept. 9, 2009) (unpublished decision) (rejecting application of *Heck* and noting that the loss "of the potential to receive earned time credits . . . is merely a theoretical, and not an actual, loss").

6

Furthermore, I note that according to the CDOC website, Plaintiff is serving a sentence of life without parole.[2]  As such, he does not appear to be eligible to obtain a quicker release regardless of his administrative segregation status.  *See Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998) (noting that if a favorable determination would not automatically entitle a prisoner to accelerated release, *Heck* does not apply).  Accordingly, the Court is not persuaded that Plaintiff's placement in administrative segregation came about through a "proceeding[] that call[s] into question the fact or duration of [his sentence]," *Crow v. Penry*, 102 F.3d 1086, 1087 (10th Cir. 1996), and the Court resolves this claim on its merits.

In general, "administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration."  *Hewitt v. Helms*, 459 U.S. 460, 468 (1983).  Such confinement thus does not typically implicate a protected liberty interest.  In *Sandin v. Conner*, however, the Supreme Court held that administrative segregation may implicate a liberty interest protected by the due process clause if it "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995); *see also Wilson v. Jones*, 430 F.3d 1113, 1120-21 (10th Cir. 2005).

To state a Fourteenth Amendment due process claim, a plaintiff must allege details that satisfy two elements.  *See Bartell v. Aurora Pub. Schs.*, 263 F.3d 1143, 1149 (10th Cir. 2001).  First, he must show that he possesses a protected liberty interest.  *See id.*; *Veile*

---

[2] The Court may take judicial notice of public information without converting a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) into a motion for summary judgment pursuant to Fed. R. Civ. P. 56.  *See Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000).

*v. Martinson*, 258 F.3d 1180, 1184-85 (10th Cir. 2001). Second, he must show that he was not afforded the appropriate level of process. *See Bartell*, 263 F.3d at 1149. Here, Defendant argues that Plaintiff's Complaint fails to make sufficient allegations to satisfy either element of the Fourteenth Amendment analysis. *Motion to Dismiss* [#27] at 5-7.

Liberty interests "are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). While "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," *Shaw v. Murphy*, 532 U.S. 223, 228 (2001), this reality is tempered by the recognition that "[t]here is no iron curtain drawn between the Constitution and the prisons of this country." *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974). In considering whether Plaintiff's allegations trigger a liberty interest, I must examine the conditions of confinement before I determine whether such conditions impose an atypical and significant hardship on the inmate. *See Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006) (citing *Gaines v. Stenseng*, 292 F.3d 1222, 1225-26) (10th Cir. 2002)).

The Supreme Court addressed the issue of administrative segregation in *Wilkinson v. Austin*, 545 U.S. 209 (2005). Specifically, the Court considered whether prisoners were deprived of a liberty interest by their placement in Ohio's super maximum prison and whether they were provided sufficient process regarding that placement. *Id.* at 213. The Court considered the totality of the conditions at the super maximum prison in determining whether confinement there imposed an atypical and significant hardship. *Id.* at 214-15.

8

Many of the conditions at issue in *Wilkinson* are similar to those complained of here, namely (1) limited human contact; (2) confinement for as many as twenty-four hours per day, with one hour allotted for exercise on certain days, but not every day; (3) confinement with the lights on for twenty-four hours a day; (4) indefinite incarceration at the super maximum prison with limited review regarding the continued propriety of placement there; and (5) no ability for parole. Given the totality of these conditions, the Court found that prisoners had a liberty interest not to be confined at the super maximum prison without appropriate due process protections. *Id.* at 220-24.

Defendants contend that Plaintiff has not placed the violation of a liberty interest at issue. *Motion to Dismiss* [#27] at 5-6. As Defendants' correctly note, mere placement in administrative segregation does not, on its own, implicate a liberty interest. *Talley v. Hesse*, 91 F.3d 1411, 1413 (10th Cir. 1996); *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994). A determination of what constitutes an atypical and significant hardship necessarily includes a consideration of whether the conditions in question are a dramatic departure from what would be expected of a person serving a similar sentence. This consideration includes whether the segregation complained of (1) differs significantly from other types of segregation; (2) differs significantly from what it would have been had the prisoner remained in the general prison population; (3) inevitably increases the duration of a prisoner's sentence; (4) is for an indefinite term; and (5) furthers a legitimate interest. *Sandin*, 515 U.S. at 484-87; *Estate of DiMarco v. Wyo. Dep't of Corr., Div. of Prisons*, 473 F.3d 1334, 1342 (10th Cir. 2007).

Addressing the first two factors, although the description of Plaintiff's conditions of confinement are somewhat inconsistent throughout his Complaint, it appears that Plaintiff

is alleging that his conditions in administrative segregation are that he is "locked in a tiny cell 23 hours a day," "in a room no bigger than a bathroom" which smells of fumes, "for several years or more," he lacks fresh air and control of the lights, has limited indoor exercise and no outdoor exercise, and has limited contact with others. *See Complaint* [#3] at 12, 13, 17, 19, 20 & 28. Plaintiff also appears to contend that these conditions differ significantly from those he would experience in the general population. *See id.* at 7-8 (noting that for the brief period he was out of administrative segregation he was able to live around other inmates and "felt like a free man"). I find that these factors, as pled, weigh in favor of Plaintiff at this stage.

Addressing the third and fourth factors, while Plaintiff does not contend that the length of his sentence has been impacted, nor could he given that he is serving life without parole, he does argue that his placement in administrative segregation is indeterminate.[3] I find that the third factor weighs in favor of Defendant given that segregation does not unreasonably impact the length of Plaintiff's sentence. However, I find that the fourth factor weighs in favor of Plaintiff, as the length of his segregation appears to be undefined.

Finally, addressing the fifth factor, Plaintiff argues that, given his "minor" disciplinary history, including sending insulting letters to Defendant, his placement in administrative segregation without knowledge of when the segregation would end is an unreasonable punishment that does not further a legitimate interest. *Complaint* [#3] at 14, 17-18, 22, 25.

---

[3] Defendant counters that because Plaintiff was transferred from CSP to CCF on October 21, 2008, his placement was not indeterminate. *Compare Motion* [#27] at 8, *with Complaint* [#3] at 10. However, reviewing the Complaint in its entirety reveals that Plaintiff (1) claims to still be subjected to administrative segregation despite his transfer from CSP to CCF and (2) seeks redress both for his former placement at CSP and his placement at CCF.

Defendant failed to address her motivation or justification for placing Plaintiff in administrative segregation. However, I note that an attachment to Plaintiff's Complaint indicates that Plaintiff has "spent over 11 years, on 3 different occasions, assigned to high security units due to [his] disruptive behavior." *Id.* at 42. At this stage of the case, and considering the allegations asserted by Plaintiff in the Complaint as true, I find that this factor weighs slightly in favor of Plaintiff. If, however, as the attachment suggests, Plaintiff's placement in administrative segregation was due to his longstanding history of disruptive behavior rather than due to his minor insults to Defendant, the analysis of this issue may reach a different result. *See generally Thompson v. Winn*, 07-cv-00025-MSK-KLM, 2008 WL 901570, **6-9 (D. Colo. Mar. 31, 2008) (unpublished decision) (noting that the "determination of whether there is a protected liberty interest is highly fact dependent and requires consideration of a number of nonexclusive factors, viewed in their totality."); *Georgacarakos v. Wiley*, 07-cv-01712-MSK-MEH, 2008 WL 4216265, at *15 (D. Colo. Sept. 12, 2008) (unpublished decision) (holding that allegations of conditions which are similar to those in *Wilkinson* sufficiently stated a claim to survive a motion to dismiss).

In summary, I find that Plaintiff has sufficiently alleged the deprivation of a liberty interest. Implication of a liberty interest is the threshold consideration regarding whether Plaintiff's due process claim can go forward. Plaintiff must also sufficiently allege that he failed to receive the appropriate level of process regarding his ongoing segregation. *Wilkinson*, 545 U.S. at 224.

The requirements of due process are "flexible and cal[l] for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). To determine what level of process is due, the Court considers three factors:

> First, the private interest that will be affected by the official action; second the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burden that the additional or substitute procedural requirements would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  Moreover, "[p]risoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all."  *Wilkinson*, 545 U.S. at 225.

In *Wilkinson*, the Supreme Court found that prisoners had a liberty interest not to be placed in the super maximum prison without sufficient preliminary and ongoing safeguards. *Id.* at 225-30.  Those safeguards included notice of the factual basis for their assignment to the super maximum facility and an opportunity for rebuttal.  The Court was also persuaded that adequate process was provided given that the decision passed through multiple levels of review prior to becoming final, and upon placement in the super maximum facility, the placement was reviewed again within thirty days, and then annually thereafter.

Here, the "private interest" that is implicated is the alleged deprivation of Plaintiff's constitutional liberty interest, specifically his interest in avoiding ongoing placement in administrative segregation.  While Plaintiff's interests are necessarily curtailed due to his incarceration generally, such interests are not left at the jailhouse door and forever surrendered.  *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). .

Regarding the risk of an erroneous deprivation of Plaintiff's "private interest," while Plaintiff was provided a hearing in advance of his placement in administrative segregation, according to the Complaint, Defendant had already decided to segregate him and refused

to consider Plaintiff's explanations or pleas for leniency.  *See Complaint* [#3] at 5.  Further,

Plaintiff indicates that Defendant had authority to place anyone in segregation and that

there was no oversight regarding her decisions.  *See id.* at 2, 6 & 14.  In addition, although

the Complaint makes no mention of what ongoing opportunities Plaintiff had to be released

from administrative segregation, Plaintiff infers that his placement was indefinite and that

he was never given a timeline for his punishment or follow-up hearings to determine the

necessity for his ongoing placement.  *See id.* at 13.  Although, the facts as alleged are very

limited as to this issue, I find that Plaintiff has minimally alleged that the risk of the

erroneous deprivation of a liberty interest is high.

Finally, regarding the government's interest, it cannot be denied that the government

has a significant interest in managing its prison facilities and maintaining order among its

personnel and inmates.  *See Wilkinson*, 545 U.S. at 227.  While it appears that Plaintiff

was placed in administrative segregation for insubordination, the validity of such a

justification in relation to the length of time Plaintiff spent in admininistrative segregation

has not been sufficiently detailed.  As such, at present, this factor is outweighed by the

private interest involved and the risk of erroneous deprivation of that interest.

Accepting all of Plaintiff's allegations as true and construing them in the light most

favorable to him, as required, I find it plausible that Plaintiff could prove that he has a

protected liberty interest in avoiding indefinite placement in administrative segregation.  I

also find that Plaintiff has sufficiently pled the denial of adequate process given Defendant's

alleged ad hoc hearing where she appeared to have already decided to send him to

administrative segregation and where there is no indication in this record that Plaintiff has

been given a meaningful opportunity for further review of his punishment.[4]

In summary, the Court recommends that Plaintiff's Fourteenth Amendment due process claim go forward.[5]

### B. Fourteenth Amendment Equal Protection

The Equal Protection Clause of the Fourteenth Amendment prohibits the government from treating similarly situated individuals differently. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Here, Plaintiff argues that he was given a harsher punishment than white or Hispanic inmates who committed similar or more extreme conduct violations. Ordinarily in a prison context, the Court considers whether the alleged disparate treatment is "reasonably related to a [any] legitimate penological interests." *Shaw*, 532 U.S. at 225. However, because Plaintiff alleges that he was discriminated against because of a suspect classification, namely his race, the Court employs a strict scrutiny analysis. *United States v. Manuel*, 992 F.2d 272, 275 (10th Cir. 1993).

---

[4] Although not entirely clear from the Complaint, it appears that Plaintiff may have had an additional hearing a few weeks after he met with Defendant to formally determine whether to place Plaintiff in administrative segregation. *See Complaint* [#3] at 13. Plaintiff claims that this hearing was biased because Defendant had already told the hearing officers that he was to be placed in administrative segregation. *Id.* In addition, attachments to Plaintiff's Complaint indicate that there is an appeal process for individuals placed in segregation, however, it is unclear whether and to what extent the appeal process enabled Plaintiff to have ongoing review of his placement. Expansion of the record and facts involving the purpose of this hearing, including the basis for placing Plaintiff in admininistrative segregation, and the appeal process may impact any later review of this issue.

[5] To the extent that Defendant argues that regardless of whether Plaintiff has stated a due process claim she is entitled to qualified immunity, the Court rejects her argument. At the time of Plaintiff's placement in admininistrative segregation and throughout the duration, it was clearly established that similar conditions, without appropriate procedural safeguards, are not constitutionally permissible. *See Wilkinson*, 545 U.S. at 224-27.

An equal protection claim involving a suspect classification involves two components. First, a plaintiff "must show that he was singled out [for punishment] while others similarly situated were not." *United States v. Johnson*, 765 F. Supp. 658, 660 (D. Colo. 1991). Second, "[a] plaintiff in an equal protection action has the burden of demonstrating discriminatory intent." *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988). While the discriminatory intent does not need to be the sole purpose for the decision, it must be at least a motivating factor. *Villanueva v. Carere*, 85 F.3d 481, 485 (10th Cir. 1996). However, "something more than speculation and conjecture is necessary for proof." *Manuel*, 992 F.2d at 276.

Defendant argues that Plaintiff has failed to plausibly allege that he is similarly situated to other inmates. *Motion to Dismiss* [#27] at 10. Plaintiff's conclusory attempt to argue that he is similarly situated to other prisoners with disciplinary convictions or disciplinary problems has been addressed and rejected by the Tenth Circuit because a prisoner's "claim that there are no relevant differences between him and other inmates that reasonably might account for their different treatment is not plausible or arguable." *Templeman*, 16 F.2d at 371. While Plaintiff alleges in his Complaint that he is similarly situated to other inmates with similar or more drastic disciplinary histories, he fails to plausibly articulate how it could be "that there are other inmates who are similar in every relevant respect" or address the likelihood that a facility might "classify inmates differently because of slight differences in their histories." *Id.* Similar claims have been found to be "indisputably meritless" and "clearly baseless." *Fogle*, 435 F.3d at 1261; *Templeman*, 16 F.3d at 371. Despite Plaintiff's long list of inmates who committed misconduct but were allegedly not punished as harshly as he was, a simple review of these inmates' alleged

misconduct, as stated by Plaintiff, reveals that none committed conduct analogous to Plaintiff's conduct, namely writing critical letters to Defendant which challenged her authority during the time period for which Plaintiff was under investigation for offering to sell drugs at the prison and immediately after he was released from a five-year period of segregation. *See Complaint* [#3] at 6-7.[6]

In addition, Plaintiff's conclusory assertion that Defendant was motivated to punish him because of his race falls short of implicating an equal protection violation.[7]  *See, e.g.*, *Howard v. Jaramillo*, 07-cv-01268-CMA-CBS, 2008 WL 5381469, at *8 (D. Colo. Dec. 22, 2008) (unpublished decision) (noting that inmate's subjective belief that he was a victim of racial discrimination is insufficient to raise equal protection violation).  This is particularly true here where an attachment to Plaintiff's Complaint indicates that, rather than being punished more harshly because of his race, Plaintiff was disciplined according to a longstanding history of misconduct.  *See Complaint* [#3] at 42.  Further, it is not enough to argue that because  white or Hispanic inmates were statistically punished less harshly than Plaintiff, that this alleged fact shows a motivation to discriminate.  *Otero v. Mesa County Valley Sch. Dist.*, 470 F. Supp. 326, 331 (D. Colo. 1979).  Moreover, the mere failure to punish other offenders is no basis for finding an equal protection violation.  *See United States v. Moon Lake Elec. Ass'n*, 45 F. Supp. 2d 1070, 1084 (D. Colo. 1999) (citation omitted).

---

[6] Specifically, in the Complaint, Plaintiff indicates that he has "heard of" or heard "reports" of white inmates assaulting officers, infecting other inmates with "H.I.V.-Aids," testing positive for "herion [sic]," participating in gang riots, and possessing weapons but not receiving administrative segregation. *Complaint* [#3] at 6-7.

[7] Plaintiff never indicates in his Complaint what race is at issue here.

Here, although Plaintiff provides a detailed summary about the decision which led to his placement in segregation, his own allegations belie his assertion that racial discrimination was a motivating factor. As noted in his Complaint, Plaintiff acknowledges that Defendant's decision was made because she was upset about Plaintiff's critical letters calling her "the great one" and "the superior one." *See Complaint* [#3] at 5-6. Despite Plaintiff's contention that he also accused Defendant of being racist during the hearing, Plaintiff's mere assertion does not make it so. Moreover, I note that Plaintiff does not indicate that Defendant acknowledged being a racist or that she made any racial remarks to him. *See, e.g.*, *Merritt v. Hawk*, 153 F. Supp. 2d 1216, 1225 (D. Colo. 2001) (noting that racial comments strongly suggest discriminatory motive). Rather, she became very upset after Plaintiff made the accusation. In addition, according to the specific allegations contained in the Complaint, Defendant had already decided to place Plaintiff in administrative segregation before he called her a racist because of his letters to her that were critical of her authority during the time period he was under investigation for other disciplinary violations and immediately after his release from a five-year period of segregation. Whether this decision was retaliatory or made with sufficient constitutional safeguards is not at issue in relation to this claim.[8]

In summary, the Court recommends that Plaintiff's Fourteenth Amendment equal

---

[8] To the extent that the Complaint contains conclusory assertions that Defendant discriminated against him on the basis of his religious beliefs, there is no mention of what those beliefs were or that Defendant had knowledge thereof. Plaintiff's conclusory allegations without factual support are insufficient to state a claim for religious discrimination. *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (noting that court is "not required to fashion [*pro se* plaintiff's] argument for him where his allegations are merely conclusory in nature and without supporting factual averments").

protection claim be dismissed.

**C.** **Eighth Amendment Cruel and Unusual Punishment**

Plaintiff argues that his placement in administrative segregation constitutes cruel and unusual punishment because he "suffers deprivation of nearly all fresh air, no sun or wind on the body, the guards control the lighting in each cell, [he is] allowed one hour out of [his] cell, five days a week into another small cell or cage, and [is] denied outdoor recreation for exercise." *Complaint* [#3] at 17. He also claims he was "kidnaped from [general] population and sent to the torture chamber CSP" in violation of the Eighth Amendment. *Id.* at 21. He alleges that "prison officials acted with deliberate indifference to the Plaintiffs [sic] health and safety, when [they] decided to inflict cruel and unusual punishment." *Id.* at 23. Specifically, he claims that Defendant knew the terrible impact that placement in administrative segregation would have on Plaintiff because he had attempted suicide once before while in admininistrative segregation for a five-year period. *Id.* at 26.

Pursuant to the Eighth Amendment, prison officials have a duty to "provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). As such, the Eighth Amendment requires that "prison officials . . . ensure that inmates receive adequate food, clothing, shelter, and medical care, and [that they] must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). The Court's analysis of Plaintiff's Eighth Amendment claim involves both an objective and subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).

As to the objective component, the Court considers whether Plaintiff has been deprived of a sufficiently serious basic human need, i.e., an extreme deprivation. "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against

18

society, only those deprivations denying the minimal civilized measure of life's necessities . . . are sufficiently grave to form the basis of an Eighth Amendment violation.'" *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (citations omitted). Here, the issue is Defendant's placement of Plaintiff in administrative segregation where Plaintiff claims he was subjected to extraordinarily harsh conditions.

As to the subjective component, the Court considers whether Defendant intended the deprivation, i.e., acted with deliberate indifference to the harm that could result. *See id.* The subjective element can only be proved by showing that Defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety" or acted with a sufficiently culpable state of mind. *See Farmer*, 511 U.S. at 837; *Hudson*, 503 U.S. at 8.

Although framed as an Eighth Amendment claim, a claim which relates to sanctions imposed pursuant to a disciplinary decision, and the atypical nature of those sanctions in relation to the incidents of ordinary prison life, is better asserted as a Fifth Amendment due process claim. *See generally Sandin*, 515 U.S. at 483-84*; see also Castro v. United States*, 450 U.S. 375, 381 (2003) (noting that it is appropriate for federal courts to ignore the legal labels attached to a *pro se* party's claims "to create a better correspondence between the substance of [the party's claims] and [the] underlying legal basis").

Nevertheless, assuming Plaintiff can pursue an Eighth Amendment claim to address his conditions of confinement, I find that Plaintiff has failed to allege sufficient facts to show that he was deprived of his basic human needs. As a preliminary matter, the Court interprets Plaintiff's argument to be that because he was unstable and disliked being in administrative segregation before, it was objectively and subjectively unreasonable to place him in administrative segregation again. *See Complaint* [#3] at 12. Were this the standard,

a prisoner's second or subsequent placement(s) in segregation would always run afoul of the Eighth Amendment. Without deciding whether Plaintiff's specific allegations state a subjective claim against Defendant, I find that Plaintiff has failed to show that his conditions were objectively cruel. First, Plaintiff acknowledges that his conditions at CSP and later at CCF, were the same as the conditions that he faced in his prior administrative segregation. He does not argue that the five years he spent in segregation before his current claim constituted unusually cruel conditions. Second, Plaintiff does not allege that he was denied the basic necessities of survival such as food, drink, sleep, sanitation, hygiene materials, bedding and utilities. *See Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980). Third, Courts have consistently rejected Plaintiff's contention that the lack of outdoor exercise or fresh air to breath constitutes a *per se* Eighth Amendment violation, particularly where the prisoner gets at least an hour of exercise per week and some fresh air. *See Bailey v. Shillinger*, 828 F.2d 651, 653 (10th Cir. 1987). Given that Plaintiff admits that he gets one hour a day out of his cell and that he is not completely denied fresh air, he has failed to allege an objectively serious deprivation. Fourth, while lack of sleep from the lights being left on twenty-four hours a day may, in combination with other factors, state an objectively serious deprivation, *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999), Plaintiff merely alleges that he does not have control of the lights. This allegation, without more, does not state an objectively serious deprivation. Because Plaintiff has failed to allege that he was denied the minimal necessities of civilized life, his Eighth Amendment claim must fail.

In summary, the Court recommends that Plaintiff's Eighth Amendment cruel and unusual punishment claim be dismissed.

### D.    First Amendment Retaliation

"[T]o establish a First Amendment retaliation claim, a prisoner must demonstrate that he was (1) engaged in protected conduct; (2) that he suffered an adverse action; and (3) that a causal connection exists between the protected conduct and the adverse action." *Baldauf v. Hyatt*, No. 01-cv-01315-REB-CBS, 2008 WL 280839, at *7 (D. Colo. Jan. 31, 2008) (unpublished decision) (quoting *Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004)). However, an inmate is not "inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he is engaged in protected activity." *Peterson v. Shanks,* 149 F.3d 1140,1144 (10th Cir.1998).

To prevail on the causation element of a claim for retaliation, Plaintiff "must prove that 'but for' the retaliatory motive, the incidents to which he refers . . . would not have taken place." *Id.* (citing *Smith v. Maschner*, 899 F.2d 940, 949-50 (10th Cir. 1990)). That is, "it is imperative that [a] plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice; plaintiffs must, rather, allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990); *see also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) ("[T]he inmate must allege more than his personal belief that he is the victim of retaliation.").

While the filing of lawsuits and grievances are protected conduct to satisfy the first element, it is unclear whether Plaintiff was pursuing either type of conduct here. *See, e.g.*, *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (holding that prison officials may not retaliate against prisoners for filing lawsuits or petitioning for redress of nonfrivolous grievances). According to the Complaint, Plaintiff indicates that he sent "letters" directly to Defendant which challenged her authority and were written out of anger. *Complaint* [#3]

at 4; *Response* [#37] at 12. Plaintiff does not have an unfettered right to insult or challenge the authority of prison officials. *Georgacarakos v. Wiley*, 2010 WL 1291833, at *10 (D. Colo. Mar. 30, 2010) (unpublished decision) (noting that conduct which does not comply with prison disciplinary rules, even if engaged in for purposes of exercising an inmate's First Amendment rights, is not subject to protection); *see Watkins v. Kasper*, 599 F.3d 791, 799 (7th Cir. 2010) (noting that prisoner speech which was false and insubordinate was not protected); *Lewis v. Randle*, 66 Fed. Appx. 560, 562 (6th Cir. May 23, 2003) (noting that prisoner's letter of complaint to warden "arguably was not constitutionally protected"); *Wilson v. Budgeon*, No. 3:05-2101, 2007 WL 464700, at *6 (M.D. Pa. Feb. 13, 2007) (unpublished decision) (holding that inmate's argument with prison official was not protected conduct); *see also Brown v. Conagra Food Ingredients Co.*, 07-cv-01108-MSK-KMT, 2008 WL 5101731, at *9 (D. Colo. Dec. 1, 2008) (unpublished decision) (noting that complaining to one's superior about rude treatment "is insufficient to constitute protected conduct").

Further, to the extent that Plaintiff's accusation that Defendant was a racist played any role in his punishment, prisoners do not have a constitutional right to make insulting accusations with impunity. *Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (holding that making an insulting accusation about a prison official during a disciplinary hearing was not protected speech). In addition, it is unclear whether any of Plaintiff's speech would constitute "a matter of public concern or an issue of public importance." *Anglin v. City of Aspen, Colo.*, 552 F. Supp. 2d 1205, 1227 (D. Colo. 2008) (noting that inmate's speech must be "calculated to disclose misconduct" that would fall within the public's interest); *see also Boyce v. Andrew*, 510 F.3d 1333, 1344 (11th Cir. 2007) (noting that individual "may

22

not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run" (citation omitted)). However, at this stage of the proceeding, it is unclear whether Plaintiff's conduct could be classified as filing a nonfrivolous grievance or involving a matter of public concern such as to deserve protection or whether his conduct rose to the level of a violation of a prison disciplinary rule or a private concern such as to prevent protection. Although arguably a close call, I find that Plaintiff has plausibly pled facts which could be found to constitute the exercise of protected conduct. Upon the development of additional facts and expansion of the record, e.g., at the summary judgment stage, this preliminary finding will be subject to further review.

I also find that Plaintiff has minimally pled facts which satisfy the second and third elements of the retaliation test. It cannot be disputed that Plaintiff's placement in indefinite administrative segregation constitutes an adverse action. Furthermore, according to the Complaint, the initial purpose of the hearing which led to the adverse action was to address Plaintiff's insulting letters. According to Plaintiff, Defendant's impetus to punish Plaintiff further escalated at the hearing when Plaintiff called her a racist. Taking Plaintiff's allegations as true, he was punished for his letters and for accusing Defendant of being a racist. Accordingly, I find that he has plausibly supplied a causal link between his conduct and the punishment. If, however, upon discovery it is revealed that the punishment came about as a result of Plaintiff's earlier disciplinary infraction for offering to sell drugs at the prison for a friend or because of a longstanding history of misconduct, such that regardless of the exercise of any protected conduct the punishment would have occurred, the causal connection will be vitiated. *See Baldauf*, 2008 WL 280839, at *8 (citing *Babcock v. White*,

102 F.3d 267, 275 (7th Cir. 1996)).

In summary, the Court recommends that Plaintiff's First Amendment retaliation claim go forward.[9]

## IV. Conclusion

Accordingly, I respectfully **RECOMMEND** that the Motion to Dismiss be **GRANTED in part and DENIED in part** as follows:

(1)     Plaintiff's Fourteenth Amendment due process claim and First Amendment retaliation claim should go forward.

(2)     Plaintiff's Fourteenth Amendment equal protection claim and Eighth Amendment cruel and unusual punishment claim should be dismissed.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73

---

[9] To the extent that Defendant claims that her actions are nevertheless protected by qualified immunity, I disagree.  It is clearly established that a prison official may not retaliate against a prisoner for pursuing constitutionally-protected speech.  *See Smith v. Maschner*, 899 F.2d 940, 948-50 (10th Cir. 1990).

F.3d 1057, 1060 (10th Cir. 1996).

Dated:  May 19, 2010

<div style="margin-left: 50%;">

BY THE COURT:
 s/ Kristen L. Mix_____
U.S. Magistrate Judge
Kristen L. Mix

</div>